IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DONALD SETH ANDREWS, JR.                                          PLAINTIFF

                    v.                 Civil No. 09-5080

SHERIFF KEITH FERGUSON;
DEPUTY MORRISON,
Jail Deputy; DEPUTY LEESE,
Jail Deputy; DEPUTY McCRANNIE,
Jail Deputy; and DR. HUSKINS                                      DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The plaintiff, Donald Seth Andrews, Jr., filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*.

The events at issue in this action occurred while plaintiff was incarcerated in the Benton County Detention Center (BCDC) from February of 2009 through May of 2009. While at the BCDC, plaintiff contends his constitutional rights were violated in the following ways: he was denied adequate medical care; he was subjected to unconstitutional conditions of confinement; he was denied access to the law library; and he was subjected to a harmful or malicious "practical joke" and verbal abuse.

Defendants filed a summary judgment motion (Doc. 15). To assist plaintiff in responding to the motion, I propounded a questionnaire (Doc. 20). Plaintiff filed a response to the questionnaire within the time specified by the court (Doc. 21). The motion is now ready for decision.

-1-

## **Background**

Andrews was arrested and booked into the Benton County Detention Center (BCDC) on February 19, 2009. *Plaintiff's Response* (Doc. 21)(hereinafter *Resp.*) at ¶ 1(A). He was serving a one hundred and twenty day sentence. *Id.* He remained incarcerated at the BCDC until May 20, 2009, when he was released. *Id.* at ¶ 1(B).

While Andrews signed a listing of detainee rules and rights, he was not provided a copy because "they didn't have enough rule books for everyone." *Resp.* at ¶ 2. When being booked in, Andrews completed a medical questionnaire. *Id.* at ¶ 3(A). He noted that he had a sore throat, and was subject to blood clotting. *Id.* Andrews indicated he was on Coumadin, Vicodin, Tramadol, Campral, and several other medications. *Id.* He stated he had been hospitalized recently and was under the care of Dr. Wipf. *Id.* He indicated he had a broken tooth. *Id.* at ¶ 3(B). While the questionnaire indicates Andrews had Hepatitis C, Andrews states he never indicated he had Hepatitis C. *Id.* If he had said he had Hepatitis C, Andrews wonders why he was not isolated from non-infected inmates. *Id.*

An inmate medical insurance information form was completed. *Defendants' Exhibit* (hereinafter *Defs' Ex.*) 2 at page 2; *Resp.* at ¶ 3(C)(without knowledge to agree or disagree). The form indicated Andrews had no insurance and acknowledged that he was the responsible party for medical bills for pre-existing conditions. *Id.*

On February 19th, Andrews submitted a medical request stating he needed the medication he took daily for blood clots and numerous other medications. *Resp.* at ¶ 4(A). In response, Andrews was told he would be seen by the doctor. *Id.* at ¶ 4(B). On February 20th, Andrews

AO72A
(Rev. 8/82)

completed a release of medical information request so that Andrews' medication list could be requested from Dr. Wipf.

Records received from Dr. Wipf's office indicated Andrews had the following active problems:  Pain, low back with L2 and L3 compression fractures and history of L4-5 disc herniation with spinal stenosis; Sacroiliitis; Barrett's Esophagus; Peptic Ulcer Disease; pulmonary embolism (blood clot to lungs) or infarction status post motor vehicle accident; WITH Factor V Leiden Mutations (heterozygote); L2 and L3 compression fractures; leukocytosis; asthma; hernia, ventral unspecified; depression; and tobacco dependency. *Defts' Ex.* 2 at page 6; *Resp.* at ¶ 4(D)(I was never allowed to see the records provided to the jail).  It was also noted Andrews had a splenectomy in 2001. *Id.*

Dr. Wipf's records showed Andrews' current medications as:  Vicodin ES Tabs; Advair 1 puff daily; Warfarin 4 mg.; Campral; and Tramadol.    *Defts' Ex.* 2 at page 6; *Resp.* at ¶ 4(E)(without knowledge to agree or disagree).   The following were listed as discontinued medications:  Flexeril; Bupropion; Prevacid; Chantix; Protonix; Advair; Albuterol inhaler. *Defts' Ex.* 2 at page 7; *Resp.* at ¶ 4(F)(without knowledge to agree or disagree).

On February 19th, Andrews was found guilty in the Benton County Circuit Court of failure to register as a sex offender. *Defts' Ex.* 1 at page 8-11.  As a special condition, the judgment said he was to "receive medications in jail as prescribed." *Id.* at page 10.

Andrews was seen by Dr. Huskins on February 20th and he prescribed Coumadin and Tylenol. *Resp.* at ¶ 14. On February 23rd, Andrews submitted a medical request asking for more medications than he was currently receiving. *Defts' Ex.* 3 at page 3.  He also stated he wanted to talk to the doctor about the medication he was taking and the dosage of each. *Id.* In response,

AO72A
(Rev. 8/82)

he was put on the list to see the doctor.  *Defts' Ex.* 3 at page 2.  Andrews was seen by Dr. Huskins on the 23rd.  *Defts' Ex.* 2 at page 15; *Resp.* at ¶ 7(without knowledge to agree or disagree).  Andrews was prescribed Coumadin, Pepcid and an albuterol inhaler.  *Id.*

On March 5th, Andrews submitted a medical request for a cold and pain  in his back.  *Resp.* at ¶ 9.  In response, he was put on the list to see the doctor.  *Defts' Ex.* 3 at page 4.  He was seen on March 6th and prescribed Sudafed and Tylenol.  *Defts' Ex.* 2 at page 17; *Resp.* at ¶ 11(without knowledge to agree or disagree).

On March 18th, Andrews asked to see the doctor about his medications.  *Resp.* at ¶ 12.  He was again put on the list to see the doctor.  *Defts' Ex.* 3 at page 4.  Andrews was seen by Dr. Huskins on March 30th and prescribed Tylenol.  *Resp.* at ¶ 14.

On March 31st, Andrews submitted a grievance about having been housed in E-102 cell 123.  *Resp.* at ¶ 15(A); *Defts' Ex.* 4 at page 2.  Andrews stated that he was locked up with Hepatitis C inmates.  *Id.*  Andrews  stated he did not have a spleen which made him susceptible to diseases and infections.  *Id.*  He also stated he had numerous medical conditions.  *Id.*  He stated he had been left on the floor for over thirty days.  *Id.*  He asked to be tested for diseases and for medical attention.  *Id.*

Although Andrews' medication questionnaire indicates he had a history of Hepatitis C, Andrews states he "never indicated I had Hepatitis C."  *Resp.* at ¶ 15(B).  He states that this is a contagious disease and if he had it he would have been isolated from the others or at least should have been isolated.  *Id.*  This is why Andrews states he was concerned that he was on the floor where there was spit, blood, and urine, in a pod housing inmates with AIDS and Hepatitis C.  *Id.*

In response to his grievance, Andrews was told that the doctor made the medical decisions in the jail. *Defts' Ex.* 4 at page 2. If he had a medical issue, he was told to fill out a medical request. *Id.* Andrews states he did fill out a medical request or grievance while he was housed in E-102. *Resp.* at ¶ 17. However, he states he never received a copy of the document. *Id.*

On March 31st, Andrews submitted a medical request because he was in a lot of pain. *Resp.* at ¶ 18. He was seen on April 1st by Dr. Huskins for back pain. *Defts' Ex.* 2 at page 17; *Resp.* at ¶ 19 (without knowledge to agree or disagree).

On April 8th, Andrews asked for the results of his blood tests, requested Advair for asthma, and asked for a diet change. *Defts' Ex.* 3 at page 6; *Resp.* at ¶ 20 (without knowledge to agree or disagree). He was put on the list to see the doctor. *Id.; Resp.* at ¶ 21 (without knowledge to agree or disagree). Andrews was seen by Dr. Huskins on April 10th for his complaints of back pain, stomach problems, and request for an inhaler. *Id.*; *Resp.* at ¶ 22(A). He was prescribed albuterol, an antacid, and Tylenol. *Id.* Andrews was also told that the doctor did not make diet changes. *Resp.* at ¶ 22(B).

On April 15th, Andrews submitted a medical request based on stomach and teeth pain. *Defts' Ex.* 3 at page 7; *Resp.* at ¶ 23 (without knowledge to agree or disagree). Andrews was seen by Dr. Huskins on the 17th for complaints about his lips and dental pain. *Defts' Ex.* 2 at page 7; *Resp.* at ¶ 24(A) (without knowledge to agree or disagree). Dr. Huskins prescribed Vaseline and salve. *Id.* Dr. Huskins also prescribed salt water rinses for the dental pain. *Resp.* at 24(B). Andrews was not referred to a dentist. *Id.*

On April 21st, Andrews asked to see the doctor because of his stomach and feet. *Defts' Ex.* 3 at page 8; *Resp.* at ¶ 25 (without knowledge to agree or disagree). He was seen by Dr. Huskins on the 22nd and prescribed fungal cream and Tylenol. *Defts' Ex.* 2 at page 16; *Resp.* at ¶ 26(A) (without knowledge to agree or disagree).

On April 28th, Andrews asked to see the doctor about his stomach and back. *Defts' Ex.* 3 at page 9; *Resp.* at ¶ 26(B) (without knowledge to agree or disagree). Andrews was seen on April 29th and prescribed an antacid and Tylenol. *Defts' Ex.* 2 at page 18; *Resp.* at ¶ 27 (without knowledge to agree or disagree).

On April 29th, Andrews submitted a grievance stating that he had not been given his IFP form back in a timely manner. *Defts' Ex.* 4 at page 4; *Resp.* at ¶ 28 (without knowledge to agree or disagree). In response, Captain Holly stated he had not received a form from Andrews and to submit another one. *Defts' Ex.* 4 at page 4; *Resp.* at ¶ 29 (without knowledge to agree or disagree).

Andrews submitted his next medical request on May 5th. *Defts' Ex.* 3 at page 10; *Resp.* at ¶ 30 (without knowledge to agree or disagree). He asked to see the doctor about his back and stomach pain. *Id.* He was seen by Dr. Huskins on May 6th. *Defts' Ex.* 2 at page 18; *Resp.* at ¶ 31 (without knowledge to agree or disagree). Dr. Huskins noted Andrews seemed to be doing okay on his treatment of antacids and Tylenol. *Id.*

Andrews was seen by the nurse on May 12th. *Defts' Ex.* 2 at page 18; *Resp.* at ¶ 33 (without knowledge to agree or disagree). Andrews reported that his gums were bleeding and he was passing blood in his stool. *Id.* He was seen by Dr. Huskins on May 13th. *Id.* He was prescribed antacid and Coumadin. *Id.*

-6-

On May 14th, Andrews requested Vaseline for his lips and feet. *Defts' Ex.* 2 at page 18; *Resp.* at ¶ 34 (without knowledge to agree or disagree). He said he had been bleeding from his dry cracked lips. *Id.* He was provided with the requested Vaseline. *Resp.* at ¶ 35.

Andrews' medication logs indicate he received the following medications: decongestant; acetaminophen; Warfarin; Mupirocin; Famotidine; inhalers; warm salt water rinses; antacid; and Vaseline. *Defts' Ex.* 5; *Resp.* at ¶ 37 (without knowledge to agree or disagree).

Andrews does not know if the floors in the BCDC are made of concrete. *Resp.* at ¶ 38. However, he states he did not have a mat to sleep on each night of his incarceration. *Id.* at ¶ 41. Instead, he states he was just given a sheet, blanket, and a towel. *Id.*

Andrews does not know if the cells were cleaned daily with a cleaning solvent. *Resp.* at ¶ 42. He asserts that only certain inmates were allowed access to the janitorial closet and he did not have access. *Id.* He states he had no way of knowing whether cleaning solutions were used. *Id.* However, he states the water used looked and smelled like clear water. *Id.*

Although there is noting in the jail record indicating he was the victim of a practical joke or having shampoo put in his food or salsa, Andrews states he did submit grievances. *Resp.* at ¶ 43(A) & ¶ 43(B).

Andrews was asked to describe in detail how Dr. Huskins exhibited deliberate indifference to his serious medical need. *Resp.* at ¶ 44. Andrews responded that Dr. Huskins disregarded all other treatment prescribed by Andrews' doctors. *Id.* Andrews asserts Dr. Huskins deliberately left Andrews "to suffer and be tortured" without discussing any medical issue with Andrews. *Id.* For all Andrews knows, he states Dr. Huskins is not even capable of treating his conditions unless he is an orthopedic doctor or hematologist. *Id.*

-7-

With respect to his tooth, Andrews states it broke while he was at the BCDC. *Resp.* at ¶ 46. He maintains Dr. Huskins refused to put him on the list to see the dentist. *Id.* Andrews indicates the tooth hurt everyday. *Id.* He fails to indicate why he did not submit additional requests for treatment of his tooth. *Id.* A few months after his release, Andrews states he had the tooth pulled. *Id.*

With respect to his assertion that he was given the wrong medication by deputies, Andrews was asked to state: (a) how often this occurred; (b) whether he took the wrong medication; (c) whether one or more defendants gave him the wrong medication; and (d) whether he ever submitted a grievance about this situation. *Resp.* at ¶ 47. If he did submit a grievance, Andrews was asked to attach a copy to his response. *Id.* In response, Andrews stated this happened on several occasions. *Id.* He then said: "ask for the transport records where I was taken to the hospital, and all medication was suspended for me." *Id.*

With respect to his claim that he was denied access to the law library and was unable to file an appeal, Andrews was asked: (a) whether he was represented by an attorney; (b) if he was represented by an attorney, Andrews was asked to explain why the attorney couldn't file an appeal on Andrews' behalf; (c) whether he filed any grievances regarding access to the law library; (d) if he did file grievances, attach copies to his response; (e) whether he was able to send and receive legal mail; and (f) if he could send and receive legal mail, explain why he was unable to file a notice of appeal. *Resp.* at ¶ 48.

Andrews responded: "I was not allowed to go to the law library. Ineffective assistance of counsel was one argument, I was convicted of something that wasn't even against the law. I don't know how to make up motions out of thin air." *Resp.* at ¶ 48.

-8-

Andrews was asked if he suffered any physical injuries or adverse health consequences as a result of the conditions he was confined under. *Resp.* at ¶ 49. He responded: "Pain. I can't afford a doctor so I have no records. But I have trouble walking. I live in constant pain and it's worse since my incarceration."

Andrews was asked to describe in detail how Sheriff Ferguson violated his federal constitutional rights. *Resp.* at ¶ 50. He replied that the Sheriff is responsible for the jail conditions, the deputies, and the doctor. *Id.* With respect to Deputy McCrannie, Andrews contends he was terroristically threatened by him; he was given the wrong medication by him; and his life was threatened in an attempt to keep him from filing grievances. *Id.* at ¶ 51.

With respect to Deputy Morrison and Deputy Leese, Andrews contends they mixed shampoo in his food. *Resp.* at ¶¶52-53. While if this had been done to a healthy person, Andrews states it might have been funny. *Id.* However, since he had peptic ulcers, Barrett's Esophagus and a long list of other medical problems, Andrews contends it was "cruel and unusual and depraved indifference." Andrews asserts he became sick and his stomach was burning and bleeding. *Id.* Andrews maintains this was not merely a practical joke and would have constituted a criminal act if he was the perpetrator of the "practical joke." *Id.*

### Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the

burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a . . . verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## Discussion

Defendants have now moved for summary judgment. First, defendants argue that the case must be construed to be against them in their official capacities only because plaintiff did not indicate in the complaint that he was asserting individual capacity claims against them. As there is no proof of an unconstitutional custom or policy, defendants maintain they are entitled to judgment as a matter of law. Second, defendants argue that plaintiff was not denied access to the courts. Third, they maintain Andrews was not subjected to unconstitutional conditions of confinement. Fourth, they assert Andrews was provided with adequate medical care. Defendants maintain that Andrews saw the jail medical personnel on numerous occasions, was provided with medication, and received all medical treatment and/or medication ordered. Fifth, they assert an isolated practical joke fails to rise to the level of a constitutional violation. Sixth, they maintain verbal abuse fails to give rise to the level of a constitutional violation. Finally,

-10-

defendants maintain they are entitled to judgment as a matter of law fail because plaintiff has suffered no actual physical injury.

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendants acted under color of state law and that they violated a right secured by the Constitution.  *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).   The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983.  *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

### Official Capacity and Individual Capacity Claims

Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both.  In *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits.  As explained by the Gorman case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991).  Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself.  Id. 502 U.S. at 24-27, 112 S. Ct. at 361-62 (1991).  Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense.  Id. 502 U.S. at 25-27, 112 S. Ct. at 362.

*Gorman*, 152 F.3d at 914.

-11-

The Eighth Circuit has consistently advised plaintiffs to specifically plead whether government agents are being sued in their official or individual capacities to ensure prompt notice of potential personal liability. *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989); *see also Andrus v. Arkansas*, 197 F.3d 953 (8th Cir. 1999)(In actions against officers, specific pleading of individual capacity is required to put public officials on notice they will be exposed to personal liability). When the plaintiff fails to state whether he is suing an official in his individual capacity, the Eighth Circuit has construed the claim to be against the official in his official capacity only. *See Johnson v. Outboard Marine Corp*., 172 F.3d 531, 535 (8th Cir. 1999)("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity"); *Egerdahl v. Hibbing Comm. Coll*., 72 F.3d 615, 620 (8th Cir. 1995)("*Nix* requires that a plaintiff's complaint contain a clear statement of her wish to sue defendants in their personal capacities. Neither a cryptic hint in a plaintiff's complaint nor a statement made in response to a motion to dismiss is sufficient").

The distinctions between individual and official capacities claims are at times difficult for even those with legal training to make. *See e.g., Vanhorn v. Oelschlager*, 502 F.3d 775, 779 (8th Cir. 2007)(state officials misconstrue the distinctions between official and individual capacity claims and the immunities available). Given the duty of the court to liberally construe *pro se* pleadings and the fact that it does not appear defendants will be unfairly prejudiced in anyway, we will construe the complaint as asserting individual capacity claims against the defendants.

-12-

### *Denial of Access to the Law Library*

Andrews asserts he was denied access to the law library and as a result could not file a notice of appeal. "Inmates undeniably enjoy a constitutional right of access to the courts and the legal system." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996)(*citing*, *Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). In *Myers,* the Eighth Circuit stated that:

> [t]o protect that right, prisons must provide inmates with some access to legal materials or to legal assistance so that inmates can prepare and pursue complaints, and with some ability to mail these complaints and related legal correspondence once prepared. Inmates do not have a right, however, either to law libraries or to unlimited stamp allowances for legal mail. Instead, the duty to make such arrangements is bounded by the inmates' right of meaningful access to the courts. To state a claim that a law library or legal assistance program violates this right, inmates must assert that they suffered an actual injury to pending or contemplated legal claims. Alleging theoretical inadequacies is insufficient. Inmates must instead show, for example, that a complaint that they prepared was dismissed due to a technical requirement that a library's inadequacies prevented them from knowing, or that a library was so inadequate that it prevented them from filing a complaint for actionable harm at all.

*Myers*, 101 F.3d at 544 (citations omitted).

In *Cody v. Weber*, 256 F. 3d 764 (8th Cir. 2001), the Eighth Circuit noted that the Supreme Court in *Lewis v. Casey*, 518 U.S. 343 (1996) and *Bounds v. Smith*, 430 U.S. 817 (1977), "determined that the right of access to the courts guarantees an inmate the ability to file lawsuits that directly or collaterally attack the inmate's sentence or that challenge the conditions of the inmate's confinement, but it does not extend to the right to 'discover grievances' or to 'litigate effectively once in court.'" *Cody*, 256 F. 3d at 767-68 (*quoting Lewis*, 518 U.S. at 354-55).

-13-

In this case, Andrews was represented by counsel. *Resp.* at ¶ 48. He does not contend counsel could not file a notice of appeal for him. However, he argues he intended to assert an ineffective assistance of counsel claim and could not make "up motions out of thin air." He makes no argument that he was prevented from sending legal mail. He makes no argument that he was prevented from mailing a notice of appeal, or the notice of appeal was deemed untimely, or that the notice of appeal he filed was dismissed for lack of legal adequacy. Thus, if he missed a deadline for filing a notice of appeal, it was not a result of his lack of access to the library.

Although "[p]ro se defendants have a right of access to adequate law libraries or adequate assistance from persons trained in the law," *United States v. Knox*, 950 F.2d 516, 519 (8th Cir. 1991)(quotations omitted), the right is not an abstract one and the inmate must "demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. *See also Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008)(Hartsfield failed to allege he was prevented from filing a complaint, or a filed complaint was dismissed for lack of legal adequacy. He only roughly and generally asserted that he was prevented from filing because he did not know what arguments to make. This claim is speculative and was properly dismissed). *See also Klinger v. Department of Corrections*, 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic). Andrews has made no such showing here.

### *Unconstitutional Conditions of Confinement*

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)(citation omitted).

-14-

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII.  *See also Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard of the Eighth Amendment applies to claims brought by pretrial detainees that prison officials failed to provide adequate food, clothing, shelter, etc.). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element.  *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities.  The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted).  Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875.  The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

Keeping these principles in mind, I turn to an examination of the conditions of confinement alleged to exist in this case.  Andrews alleges he was made to sleep on the floor

-15-

despite the fact that he had a back problem.  He indicates the jail nurse said he could have a bunk

if one was available.  However, because forty inmates were housed in an area designed for thirty-

two inmates, a bunk was not available.  As a result of sleeping on the floor, Andrews maintains

he was in pain.

     The mere fact that Andrews was sleeping on the floor does not create a genuine issue of

material fact as to whether the Eighth Amendment was violated.  To violate the Eighth

Amendment requires defendants to deprive a prisoner of a "single, identifiable human need."

*Wilson v. Seiter*, 501 U.S. 294, 304 (1991).  No such deprivation occurred in this case.

     Andrews, however, also claims he was housed with individuals having infectious

diseases and was made to sleep on a floor containing spit, blood, and urine.  *Resp. at* ¶¶ 15(A)-

15(B).  Because he no longer has a spleen, Andrews contends his exposure to inmates having

infectious or contagious diseases subjected him to more risk of infection than other inmates.  The

summary judgment record does not contain any information on how inmates with contagious or

infectious disease are housed.  The record does not contain any information as to the measures

employed to alleviate the risk of infection.  Nor does it contain any information on why Andrews

was housed with these inmates.  The only response Andrews received when he brought his

housing situation to the attention of jail personnel was that if he had a medical issue he should

submit a medical request.  We believe there are genuine issues of fact as to whether Andrews

being housed in E-pod with inmates having infectious or contagious disease constitutes

deliberate indifference to his constitutional rights.  *See Helling v. McKinney*, 509 U.S. 25, 35

(1993)(holding that exposure to environmental tobacco smoke states an Eighth Amendment

AO72A
(Rev. 8/82)

cause of action even though inmate is asymptomatic because the health risk posed by involuntary exposure was sufficiently imminent).

### *Denial of Adequate Medical Care Claim*

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). To prevail on an Eighth Amendment claim, plaintiff must prove that defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs*, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).

In this case, plaintiff concedes he was seen numerous times by Dr. Huskins. However, he asserts he was never given anything for his dental pain other than salt water rinses; he received nothing for his back except Tylenol; and Dr. Huskins completely disregarded the treatment plan of Andrews' doctors for his various medical conditions. *Resp.* at ¶¶ 24(B), 44, 46.

-17-

Defendants maintain that the facts, at most, establish a disagreement with the medical treatment plaintiff received while he was incarcerated.  As defendants accurately point out, medical personnel are given "considerable latitude . . . in the diagnosis and treatment of medical problems of inmates." *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).  It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010)(internal quotation marks and citation omitted).  An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id*.  Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference.  *See Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990).

In this case, there is no evidence in the jail medical records suggesting medical staff inquired as to the treatment plan, if any, developed by plaintiff's primary care physicians. Plaintiff maintained that the Tylenol was inadequate in providing pain relief.  There is no indication that other pain medications, narcotic or not, were considered.  Nothing in the record suggests medical personnel considered plaintiff's complaints of pain to be exaggerated or not supported by his medical condition.  In addition, plaintiff complained of dental pain on several occasions and it does not appear that he was placed on a list to see a dentist.  Plaintiff also complained that he was given the wrong medication by deputies on several occasions. *Resp.* at ¶ 47.  This calls into question the method of medication distribution and the training provided.

-18-

Additionally, while a medical questionnaire was completed when plaintiff was booked in and notations were made regarding several of his medical problems, there is no evidence that the information elicited on the questionnaire was utilized by jail personnel to ensure plaintiff was properly housed, received proper medical treatment, or for any other purpose.  Plaintiff contends that having to sleep on the floor aggravated his back condition and caused him to be in constant pain.

In this case, I believe there are genuine issues of fact as to whether Dr. Huskins and Sheriff Ferguson exhibited deliberate indifference to plaintiff's serious medical needs.  While supervisors cannot be held liable on a theory of *respondeat superior*, they may be held liable if they knew the prisoner's "serious medical needs were not being adequately treated yet remain indifferent."  *Langford v. Norris*, No. 09-1862, 2010 WL 2813551, *10 (8th Cir. July 20, 2010)(citation omitted).  I believe there are issues of fact as to whether the County's policies, or lack thereof, caused, or contributed to, the alleged inadequacies and delay in the provision of medical care.  County policy, in regard to the care and custody of detainees, is, of course, established by the Sheriff.  Ark. Code Ann. § 12-41-502 (Supp. 2010)("The county sheriff of each county in this state shall have the custody, rule, and charge of the jail within his or her county and all prisoners committed in his or her county, and he or she may appoint a jailer for whose conduct he or she shall be responsible.").

### Practical Joke and Verbal Abuse

According to Andrews, on one occasion, Deputies Morrison and Leese put shampoo in his food.  Andrews maintains he was sick following this incident and his stomach was burning. *Resp.* at ¶ 53.  Defendants maintain no such incident occurred but if it did it would not violate

-19-

Andrews' constitutional rights without a showing of an actual physical injury.  They maintain Andrews' allegation that he was temporarily sick as a result of the ingestion of the shampoo does not constitute an actual physical injury.  Instead, they maintain Andrews suffered at most a non-actionable de minimis injury.  The record does not contain an incident report or the affidavits of Morrison or Leese.

Andrews allegation is essentially that Morrison and Leese with malicious intent exposed him to harm without a penological purpose.  *Cf. Williams v. Jackson*, 600 F.3d 1007, 1013-1014 (8th Cir. 2010)(jail personnel in response to inmate comments removed the shield from an germicidal ultraviolet radiation lamp used for the treatment of tuberculosis).  The resulting injury is not a threshold requirement in proving an Eighth Amendment violation.  *Wilkins v. Gaddy*, ___ U.S. ____, 130 S. Ct. 1175, 1177-78 (2010)(a claim may not be dismissed solely on the *de minimis* nature of the resulting injury).  In this case, there are clearly factual issues as to whether these deputies acted as alleged by Andrews.

Defendants also maintain this claim must be dismissed because Andrews submitted no grievance regarding it.  Andrews, however, asserts he did submit grievances regarding this issue but did not get any copies back.  *Resp.* at ¶ 43(B).  Clearly, there is an issue of fact as to whether Andrews exhausted his administrative remedies.

With respect to Deputy McCrannie, we believe Andrews' claims fail.  Andrews contends McCrannie threatened him.  "Verbal threats do not constitute a constitutional violation."  *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985).  Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension.  *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993)(inmate's claims of general harassment and of verbal harassment

-20-

were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987)(verbal threats and abuse by jail officials did not rise to the level of a constitutional violation); *Martin*, 780 F.2d at 1338-1339 (being called an obscene name and threatened with adverse consequences unless he cut his hair and shaved does not state a claim of constitutional dimension); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985)(use of racially offensive language in dealing with a prisoner does not, by itself, state a claim). *Cf. Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986)(A claim was stated where the prisoner alleged "that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death.").

### *Physical Injury Requirement*

Defendants maintain they should be granted judgment as a matter of law because Andrews suffered no physical injuries as required by the Prison Litigation Reform Act (PLRA). Codified as 42 U.S.C. § 1997e(e), section 803(d) of the PLRA provides as follows: "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

The provision limits the available damages in the absence of a physical injury but does not preclude a plaintiff from pursuing a claim. *See Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004)(The physical injury requirement of the PLRA "limit[ed] recovery for mental or emotional injury in all federal actions brought by prisoners" but does not bar the recovery of nominal and punitive damages); *see also Pool v. Sebastian County*, 418 F.3d 934, 942 n.2 (8th Cir.

-21-

2005)(Section 1997e(e) presents an issue of damages under the PLRA).  As several of Andrews'

claims will proceed, we decline at this point to attempt to determine whether his claimed injuries

of pain caused by a broken tooth and the aggravation of a chronic back condition are sufficient

to enable him to recover damages for his mental pain and suffering under § 1997e(e).

### Conclusion

For the reasons stated, I recommend that defendants' motion for summary judgment

(Doc. 15) be granted in part and denied in part.  Specifically, I recommend the motion (Doc. 15)

be granted with respect to the following claims:  the denial of access to the law library or the

courts claim; and the verbal abuse claims asserted against Deputy McCrannie.  This would

dismiss all claims against Deputy McCrannie.  In all other respects, I recommend that the motion

(Doc. 15) be denied.

**The parties have fourteen (14) days from receipt of the report and recommendation**

**in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file**

**timely objections may result in waiver of the right to appeal questions of fact.  The parties**

**are reminded that objections must be both timely and specific to trigger de novo review by**

**the district court.**

**DATED** this **30th day of August 2010.**

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

-22-